MICHAEL JOHNSON *v.* COMMISSIONER OF CORRECTION
(12515)

LAVERY, LANDAU and SCHALLER, Js.

Argued September 29, 1994—decision released January 31, 1995

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Christopher Alexy,* assistant state's attorney, for the appellant (respondent).

*Christopher C. Sheehan,* deputy assistant public defender, for the appellee (petitioner).

SCHALLER, J. The respondent appeals from the habeas court's judgment granting relief to the petitioner on his writ of habeas corpus.[1] The respondent challenges the habeas court's conclusion that the petitioner's counsel rendered ineffective assistance at trial and at the plea bargaining and plea stages in violation of the petitioner's rights guaranteed by the sixth[2] and fourteenth amendments[3] to the United States constitution and by article first, § 8, of the Connecticut constitution.[4] Specifically, the respondent claims that the habeas court improperly found that counsel rendered ineffective assistance (1) by failing to conduct an adequate pretrial investigation and permitting the petitioner to testify without being aware of his prior statements in the hospital record and in the police report, and (2) by failing to advise the petitioner as to the effect of sentence credits and the option of an *Alford* plea. We reverse the decision of the habeas court.

The following facts are necessary for resolution of this appeal. The defendant was convicted, after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[5] and

[1] The respondent's petition for certification to appeal under General Statutes § 52-470 was granted.

[2] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[3] The fourteenth amendment to the United States constitution provides in pertinent part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ."

[4] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

[5] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[6] He received a total effective sentence of twelve years. The convictions were affirmed on appeal to this court. See *State* v. *Johnson*, 26 Conn. App. 433, 602 A.2d 36, cert. denied, 221 Conn. 916, 603 A.2d 747 (1992).

The facts underlying the petitioner's convictions were set forth in *State* v. *Johnson*, supra, 26 Conn. App. 434–35: "The defendant was the boyfriend of the victim's cousin and he and the victim had known one another for approximately four years. On March 23, 1990, the victim had misplaced the key to her apartment. In order to gain entry to the apartment, neighbors helped her break down the door. The defendant arrived shortly thereafter. At his suggestion, the door was then nailed shut. The only remaining access to the apartment was through the rear door. The defendant then sexually assaulted the victim at knife point. During the course of the attack both of the victim's hands were severely cut with the knife.

"After helping the victim wash the blood from her hands, the defendant left the apartment. He returned shortly thereafter to retrieve his knife. The victim, although fearful, admitted the defendant because he blocked her only means of escape from the apartment. He retrieved his knife and left. The victim waited fifteen minutes and then wrapped her hands in a towel and went to her sister's nearby apartment to call the police. The victim was taken to Yale-New Haven Hospital, where she underwent surgery on her hands and a gynecological examination. The samples obtained during the exam were taken to the state laboratory for testing."

---

[6] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

The petitioner subsequently brought a petition for a writ of habeas corpus alleging that he was denied the effective assistance of counsel. On March 3, 1993, a hearing was held before the habeas court on the amended petition, and on May 18, 1993, the court granted the petition.[7] This appeal followed.

I

The respondent first claims that the habeas court improperly found that the petitioner was denied effective assistance of counsel because counsel failed to conduct an adequate pretrial investigation and permitted the petitioner to testify without being made aware of his prior statements to the police and hospital personnel. We agree with the respondent.

With respect to this claim, the habeas court found the following facts. The petitioner took the stand at his trial. He testified that he was in the victim's apartment on the night in question, that the victim pulled a knife on him and that both of them suffered cuts when they struggled with the knife. He further testified that he went to his girlfriend's apartment after the struggle, and she told him to go to the hospital because of his wound. He went to Yale-New Haven Hospital.

The habeas court stated that, on cross-examination, the state's attorney had "very effectively" impeached the petitioner's direct testimony through the use of the hospital record, which contained a prior inconsistent statement by the petitioner. The state's attorney asked the petitioner if he had told medical personnel that the victim was his girlfriend. The petitioner denied this. The hospital record, which was later admitted into evidence, stated, however, that the petitioner had told medical personnel that it was his girlfriend who had

---

[7] The amended petition contained numerous claims of ineffective assistance. Because the habeas court concluded that the petitioner had established two of those claims, it declined to consider the remaining claims.

cut his hand with a knife. The state's attorney further impeached the petitioner through the testimony of a police officer who had interviewed the petitioner at the hospital on the night of the incident in question. The police officer testified that the petitioner had told him that while he was "making out" with his girlfriend, she went "batty" and cut him with a knife. The habeas court stated that "[t]his statement was apparently contained in the police report of the incident." On redirect examination, no effort was made to explain the petitioner's prior inconsistent statements.

The habeas court also found that the petitioner's counsel had "failed to obtain a copy of the petitioner's hospital record prior to trial. She admitted the same when the state's attorney subpoenaed the record to court, stating that she had been unsuccessful in her attempts to obtain the hospital record. The petitioner's hospital record was under the name 'Michael Moye.' " The habeas court further found that trial counsel did not remember whether she had advised the petitioner to testify. In a footnote to the memorandum of decision, the court stated that "[t]here is some indication that [the petitioner's counsel] did have access to the hospital record during the trial and before the petitioner took the stand. Apparently, however, she did not notice the statement which was later used to impeach the petitioner." The court emphasized that "credibility was the issue at this trial," and that trial counsel "remembered very little of the detail of her representation of the petitioner."

On the basis of those findings, the habeas court concluded that "[i]n permitting the petitioner to take the stand without being aware of his prior statements to the hospital and to the police, trial counsel's performance was below the range of competence of lawyers with ordinary training and skill in criminal law," and

that "[t]he deficiency in trial counsel's performance clearly prejudiced the petitioner's defense."

"In a habeas appeal, we cannot and will not disturb underlying historical facts found by the habeas court unless they are clearly erroneous. *Siano* v. *Warden,* 31 Conn. App. 94, 95, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993); *Copas* v. *Warden,* 30 Conn. App. 677, 682, 621 A.2d 1378, cert. denied, 226 Conn. 901, 625 A.2d 1374 (1993). We determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. *Siano* v. *Warden,* supra [95]; *Copas* v. *Warden,* supra [682]. We do not examine the record to see if the trier of fact could have reached a contrary conclusion. *Siano* v. *Warden,* supra [95]; *Copas* v. *Warden,* supra [682].

" 'Although the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous, whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. . . .' (Citation omitted; internal quotation marks omitted.) *Copas* v. *Warden,* supra [30 Conn. App. 682–83]. Whether the historical facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is subject to plenary review by this court, unfettered by the clearly erroneous standard. *Siano* v. *Warden,* supra, [31 Conn. App.] 96; *Copas* v. *Warden,* supra, 683.

"The right to counsel is the right to the effective assistance of counsel. *Strickland* v. *Washington,* [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]; *Commissioner of Correction* v. *Rodriquez,* 222 Conn. 469, 478, 610 A.2d 631 (1992); *Siano* v. *Warden,* supra,

[31 Conn. App.] 97; *Copas* v. *Warden,* supra, [30 Conn. App.] 681. This right is firmly grounded in the mandates of the sixth amendment to the United States constitution, the fourteenth amendment to the United States constitution, and article first, § 8, of the Connecticut constitution. *Siano* v. *Warden,* supra, 96. 'The right to counsel, however, is the right to effective assistance and not the right to perfect representation.' Id., 97; *Commissioner of Correction* v. *Rodriquez,* supra [478].

"Our Supreme Court has adopted the two-pronged analysis of *Strickland* v. *Washington,* supra [466 U.S. 687], to determine if counsel's assistance was ineffective. *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 455, 610 A.2d 598 (1992); *Sekou* v. *Warden,* 216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. *Bunkley* v. *Commissioner of Correction,* supra [455]; *Hull* v. *Warden,* 32 Conn. App. 170, 174, 628 A.2d 32 (1993); *Siano* v. *Warden,* supra [31 Conn. App. 96].

" 'To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' (Citations omitted; internal quotation marks omitted.) *Siano* v. *Warden,* supra [31 Conn. App. 96]; *Hull* v. *Warden,* supra [32 Conn. App. 174]; *Copas* v. *Warden,* supra, [30 Conn. App.] 683–84.

" 'To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (Citations omitted; internal quotation marks omitted.) *Siano* v. *Warden,* supra, [31 Conn. App.] 98; *Bunkley* v. *Commissioner of Correction,* supra, [222 Conn.] 454–55." *Davis* v. *Warden,* 32 Conn. App. 296, 301–303, 629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993).

## A

The habeas court concluded that the petitioner had been denied the effective assistance of counsel because counsel permitted the petitioner to testify without being aware of the statements he had made to the police and that counsel's pretrial investigation was inadequate in this respect.

Failure to conduct an adequate investigation can constitute ineffective assistance of counsel. *Siemon* v. *Stoughton,* 184 Conn. 547, 556–57, 440 A.2d 210 (1981). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts that are set forth in the memorandum of decision . . . where the factual basis of the decision is challenged, we must determine whether the facts set out in the memorandum of decision are supported by the evidence." *Tyson* v. *Warden,* 24 Conn. App. 729, 736–37, 591 A.2d 817, cert. denied, 220 Conn. 909, 597 A.2d 340 (1991).

In a case that is tried to the court, such as the present case, the judge is the sole arbiter of the credibility of witnesses and the weight to be given to their specific testimony. *Gorra Realty, Inc.* v. *Jetmore*, 200 Conn. 151, 160, 510 A.2d 440 (1986); *State* v. *Battista*, 10 Conn. App. 499, 503, 523 A.2d 944 (1987). It is the right of the trier of fact to draw reasonable and logical inferences from the facts that it finds to be proved. *State* v. *Martin*, 195 Conn. 166, 171, 487 A.2d 177 (1985). We cannot substitute our judgment for that of the habeas court.

"Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Siemon* v. *Stoughton*, supra, 184 Conn. 554. The burden of proof is on the petitioner to show that his trial counsel's performance fell below that standard. *State* v. *Gethers*, 193 Conn. 526, 541, 480 A.2d 435 (1984); *Siemon* v. *Stoughton*, supra, 554. The habeas court's conclusion that the trial counsel's performance fell below that standard is not supported by the evidence.

At trial, a police officer testified to the events of March 23, 1990. The officer stated that the petitioner told him that while he was "making out" with his girlfriend, she went "batty" and cut him with a knife. The police report of the incident was used solely to refresh the officer's recollection during his testimony. The report was not admitted into evidence either at the trial or at the habeas hearing. The habeas court, however, found that the inconsistent statement "was apparently contained in the police report of the incident," thus providing a basis for the court's finding of inadequate investigation. Because the report was never made a part of the record, the habeas court could not properly rely on it to support its conclusions. See *Anonymous*

v. *Norton*, 168 Conn. 421, 427, 362 A.2d 532 (1975) (court improperly quoted and made reference in memorandum of decision to medical report not admitted into evidence). Accordingly, we conclude that the trial court finding that trial counsel permitted the petitioner to take the stand without being aware of his prior statements contained in the police report lacks support in the evidence and, therefore, is clearly erroneous.

## B

The habeas court concluded that the petitioner had been denied the effective assistance of counsel because counsel permitted the petitioner to testify without his being made aware of the statements contained in the hospital records and that counsel's pretrial investigation was inadequate in that respect. The facts contained in the record do not support that conclusion.

The court found that counsel permitted the petitioner "to take the stand without being aware of his prior statements to the hospital . . . ." This factual finding is confusing because, while noting that trial counsel failed to obtain a copy of the hospital record prior to trial, the habeas court also noted that the trial transcripts revealed that counsel did receive the records before the petitioner testified. Despite this, the habeas court determined that counsel "[a]pparently . . . did not notice the statement which was later used to impeach the petitioner." No evidence exists in the trial record or at the habeas hearing to overcome the presumption of adequacy of counsel and to lead to the conclusion that the petitioner's attorney overlooked the statement attributed to the petitioner in those records.

"[I]t will require a very strong showing of omissions by defense counsel to justify overturning a conviction." *State* v. *Clark*, 170 Conn. 273, 281, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976). We do not have such omissions in this case. The

record clearly reflects that trial counsel received the medical records prior to the testimony of the petitioner. Despite this, the habeas court found that "[i]n permitting the petitioner to take the stand without being aware of his prior statements to the hospital . . . trial counsel's performance was below the range of competence of lawyers with ordinary training and skill in criminal law." There was no evidence presented that trial counsel overlooked the prior inconsistent statements of the petitioner contained in the medical records. Counsel did not testify at the habeas proceeding as to what she did with the records after receiving them from the state.

There is a strong presumption that counsel acted competently. *Davis* v. *Warden*, 32 Conn. App. 296, 305, 629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993). In the absence of any evidence to the contrary, the habeas court was obligated to presume that once counsel received the hospital records she acted competently. The fact that counsel allowed the petitioner to testify is not sufficient to show that she was unaware of the statements in the records.

Defense counsel has a duty to make reasonable investigations. *Strickland* v. *Washington*, supra, 466 U.S. 691. "The reasonableness of an attorney's investigative decisions often depends critically on the information supplied by his client." *Williams* v. *Warden*, 217 Conn. 419, 426, 586 A.2d 582 (1991), citing *Strickland* v. *Washington*, supra, 691. Here, counsel was aware that the petitioner went to the hospital for treatment on the night of the incident. The petitioner told counsel what had occurred and what had been said at the hospital that night. Counsel attempted to get the petitioner's medical records prior to trial but was unsuccessful because the petitioner had used a different name at the time of admission. On the basis of these circumstances,

counsel's investigative efforts were not so deficient as to render her performance constitutionally ineffective.

## II

The state claims that the habeas court improperly concluded that the petitioner was denied the effective assistance of counsel due to counsel's failure to advise the petitioner as to the effect of sentence credits and the option of an *Alford*[8] plea.

The state offered the petitioner an eight year sentence suspended after seven years if he would enter guilty pleas. The petitioner rejected the offer and went to trial. The petitioner testified that, when he discussed the state's offer with his counsel, she indicated that he would have to serve seven years. According to the petitioner, she did not inform him about credits for good time or about the possibility of an *Alford* plea, which would have enabled him to continue to maintain his innocence. The petitioner's counsel testified that, while she could not recall whether she had advised the petitioner about good time credits, it was "the kind of thing we always do." Trial counsel testified that she did tell the petitioner about the *Alford* plea. No *Alford* plea was ever suggested by the state or offered by the petitioner to the trial court.

The habeas court found that trial counsel had failed to advise the petitioner of the effect of good time sentence credits and that she had failed to make him aware of the option of entering an *Alford* plea. On the basis of the court's conclusion that knowledge of actual time to serve is crucial in deciding whether to plead guilty, the habeas court determined that the petitioner's counsel's failure in this regard fell "below the range of competence of lawyers with ordinary training and skill in

[8] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

criminal law." The court further concluded that counsel's deficient performance prejudiced the petitioner because it resulted in the petitioner's rejection of the plea agreement and the imposition of a greater sentence following trial. We conclude that the habeas court's determination that counsel's performance was constitutionally deficient and prejudicial to the petitioner is not supported by the facts.

A

The habeas court concluded that the petitioner had been denied the effective assistance of counsel because of counsel's failure to advise the petitioner as to the availability and effect of sentence credits.[9]

The pleading and plea bargaining stages of a criminal proceeding are critical stages in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the sixth amendment. *Hill* v. *Lockhart*, 474 U.S. 52, 56–60, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *McMann* v. *Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). A defendant must be made aware of all direct consequences of a plea. *Falby* v. *Commissioner of Correction*, 32 Conn. App. 438, 445, 629 A.2d 1154, cert. denied, 227 Conn. 927, 632 A.2d 703 (1993). "Direct consequences have definite, immediate and largely automatic effects on the range of a defendant's punishment." Id. There is no requirement, however, that a defendant be advised of every possible consequence of a plea. Id.

Sentence credits, unlike statutory sentence enhancement, are not definite, immediate, or automatic upon

---

[9] Sentence credits, otherwise known as "statutory good time," for inmates sentenced after July 1, 1983, are governed by General Statutes § 18-7a (c). Pursuant to that section, an inmate is entitled to earn a sentence reduction of ten days per month for each month served in obedience to prison rules, for a sentence of up to five years, and twelve days per month for the sixth and subsequent years of a sentence in excess of five years.

conviction. Sentence credits are conditioned on obedience to prison rules and, therefore, are not definite. Because they are determined on a month-to-month basis, they are not immediate. Sentence credits are not a direct consequence of a plea and need not be explained to a defendant. See, e.g., *Mainiero* v. *Liburdi*, 214 Conn. 717, 724–25, 573 A.2d 1207 (1990) (no constitutional right to be informed of eligibility for sentence modification and intensive probation).

Even assuming, however, that the habeas court was correct in concluding that trial counsel's assistance was "not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law," we must reverse the judgment because there was no showing that the actions of counsel during the plea negotiations prejudiced the petitioner. At the habeas hearing, the petitioner offered no evidence that had he been properly advised during plea negotiations he would have accepted the offer and actually received the allegedly proffered sentence. In *Cimino* v. *Robinson*, 6 Conn. App. 680, 683, 507 A.2d 486, cert. denied, 200 Conn. 802, 509 A.2d 517 (1986), we held that "there was no finding or evidence that, had [the petitioner] accepted the state's offer . . . the court would have accepted the plea bargain and imposed that sentence." Id., 683. The petitioner's claim of prejudice is purely speculative. We stressed in *Cimino* that the concerns that arise when a defendant accepts the state's offer and pleads guilty are not present when the defendant rejects the offer and goes to trial. "The focus of [guilty plea] cases is that an accused's right to trial should not be compromised by his failure to be fully informed and to understand the factors to be weighed in deciding to plead guilty, and thus waive the constitutional rights associated with his right to trial. Those concerns, however, are not involved where, as here, the petitioner's decision has not been

to forego his right to trial, but rather to exercise that right. In the present case, the petitioner elected to stand on his right to trial." Id., 684–85. It is clear, therefore, that the petitioner was not prejudiced by counsel's failure to inform him of the existence of sentence credits because it is speculative whether the petitioner would have accepted the offer and whether the court would have accepted the plea agreement.

B

The habeas court concluded that the petitioner had been denied the effective assistance of counsel because of counsel's failure to advise the petitioner of the option of an *Alford* plea. A guilty plea under the *Alford* doctrine is a "judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985).

There is no evidence that the state offered an *Alford* plea to the defendant, or, if such a plea had been offered, that the court would have accepted it. This claim is entirely speculative. There is no constitutional requirement that the meaning of an *Alford* plea be explained to a criminal defendant. *Tyson* v. *Warden*, 24 Conn. App. 729, 735, 591 A.2d 817, cert. denied, 220 Conn. 909, 597 A.2d 340 (1991). There was no evidence that the petitioner was given the option of pleading guilty under *Alford*. We conclude that there was no prejudice to the petitioner due to counsel's failure to inform him of the possibility of an *Alford* plea.

The judgment of the habeas court vacating the judgment of conviction is reversed and the case is remanded for further proceedings to consider the remaining claims raised in the amended petition for writ of habeas corpus.

In this opinion the other judges concurred.