[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner George Avery, Sr. brings this petition for habeas corpus alleging ineffective assistance by his trial counsel, Attorney Carl D. Eisenman. The petitioner was originally charged in four counts, namely Attempt to Commit Murder, Assault in the First Degree, Robbery in the First Degree and carrying a Revolver without a Permit. The incident on which these allegations were based took place in the early morning hours of July 16, 1990 at a rest stop on Route 8 Northbound in the Town of Litchfield. The CT Page 11769 victim was Thomas Puhalski who was shot by the petitioner at said rest stop. The petitioner fired three bullets at the victim hitting him once in the jaw which was shattered and which damaged his carotid artery. The victim still has bullet fragments remaining in his brain stem from this incident. After he shot the victim Mr. Avery demanded the victim's wallet or he would shoot him again. He then took the speaker from the victim's CB car radio which rendered that radio useless. There was one other person in the rest area at the time and the petitioner attempted to entice that person to leave the area with him. That person declined but left the area on his own. Later that person returned to the rest area and found Mr. Puhalski in his car. Mr. Puhalski then drove his car out of the rest area onto Route 8 and headed to the next exit where there was a commuter parking lot with phones. Mr. Puhalski called the police from these phones and then passed out.
As a result of his injuries Mr. Puhalski was not expected to live but fortunately he did. In the transcript of the petitioners sentencing hearing it was stated that the victim of the petitioner's shooting will live a life of continued pain. As a result of the shooting the victim has suffered a stroke. Also as a result of the shooting the victim suffers from "conductive fascia" which is a communication disorder. The victim had two young children and a wife and this shooting has wrecked havoc in their lives as well as his. The victim and his family have suffered and will continue to suffer financially because of this shooting.
The Connecticut Supreme Court has adopted the two prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984) to determine if counsel's assistance was ineffective. Johnson v.Commissioner of Correction, 36 Conn. App. 695, 701 (1995). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice Id. To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that he was not functioning as the "counsel" guaranteed the petitioner by the sixth amendment . . . . The petitioner must show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound CT Page 11770 trial strategy. Id. 702. To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would he been different Id. 702.
In Hill v. Lockhart, supra, 474 U.S. 57-58, the court determined that the same two-part standard applies to claims arising from the plea negotiation process and that the same justifications for imposing the prejudice requirement in Strickland
were relevant in the context of guilty pleas. Although the first half of the Strickland test remains the same for determining ineffective assistance of counsel at the plea negotiation stage, the court modified the prejudice standard. As in Strickland, the prejudice standard for plea negotiations is intended to determine whether, but for counsel's constitutionally deficient performance, the outcome of the plea process would have been different, The court went on to require that "in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id., 59.
The Hill court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial.Capeas v. Commissioner of Correction, 234 Conn. 139, 156.
To satisfy the Hill standard, a defendant must prove that, but for defense counsel's deficient performance there is a reasonably probability that he would have pleaded not guilty and proceeded to trial on the basis of the likelihood that his defenses would succeed in providing a more favorable outcome. ID 157 — Footnote10.
On May 20, 1991 petitioner entered a nolo contendere plea to the charge of Assault in the First Degree and to the charge of CT Page 11771 Robbery in the First Degree. The petitioner was informed as was evidenced by reviewing a transcript of the plea canvass that there was no agreement as to what his sentence would BE except that the sentence would be not less than five years and no more than forty years and a Forty Thousand ($40,000.00) Dollar fine. On July 12, 1991 Judge Dranginis sentenced the petitioner to two consecutive twenty year sentence for the aforementioned nolo contendere pleas. The total effective sentence was forty years to serve in a Connecticut Correctional institution.
The petitioner George Avery, Sr. testified that Attorney Carl D. Eisenman a Public Defender was appointed to represent him when his matter was transferred from the G.A. Court to the Part A Part of the Superior Court for the Judicial District of Litchfield. The petitioner testified that he smelled "vodka" on Attorney Eisenman many times during his (Eisenman) period of representation of him (Petitioner). He stated Attorney Eisenman was intoxicated five or six times during the period he was represented by him. The petitioner testified that he was within eighteen to twenty inches distance from Attorney Eisenman when he smelled vodka on him. The petitioner claimed the shooting was accidental and not intentional and that Attorney Eisenman never explained the differences between these two legal terms. He also stated that to the best of his knowledge Attorney Eisenman did not bring up any defenses that were applicable to his case. The petitioner also testified that Attorney Eisenman never discussed with him what evidence the state had against him. He stated that he had a copy of the victim's report but that Attorney Eisenman did not explain to him that the victim could not communicate with the court. He also claimed that Attorney Eisenman told him many times that he did not want to represent him because he was guilty. The petitioner also testified he was told by Attorney Eisenman that he would only receive a twenty year sentence of incarceration and that he would not have plead nolo contendere if he knew there was a chance the sentence would be more than twenty years.
There was blood found in the trunk of the Petitioner's car which was the victim's blood. The petitioner and the victim have the same type of blood. The petitioner stated his attorney did not tell him this. However when broken down to the fourth and fifth steps the difference between the petitioners and victims blood was discernible. The petitioner testified he feels he was railroaded and that he would have gone to a full jury trial except for the representations of Attorney Eisenman. CT Page 11772
The petitioner signed a confession for the State Police approximately two days after the shooting. He stated he only signed the confession because he had not slept in a long time and he wanted to get some sleep. It should be noted here that the petitioner discarded the victim's wallet and it's contents along Route 8 and these items were latter retrieved by the police. Likewise the gun used in the shooting was discarded by the petitioner and later found by the police.
Attorney Carl D. Eisenman testified and the court found him to be a very truthful and honest witness. He has been an attorney for forty-two and one-half (42-1/2) years and during that time he was a public defender for over twenty years. He retired as a public defender on June 1, 1995. He stated he represented the petitioner from July 31, 1990 when he appeared in court on his case the first time until January 22, 1992 when he represented the petitioner at a sentence review hearing. The petitioner's request for sentence review was denied in 1993. Attorney Eisenman stated that two public defender investigators worked on the petitioner's case at various times. He stated he talked to the petitioner at least nine times prior to his plea being entered. Attorney Eisenman stated he reviewed the statement of the petitioner with him and discussed the "accidental shooting" with the petitioner. The Litchfield State's Attorney had an open file policy so that the petitioner's attorney or his investigators had access to the state's file upon request. Attorney Eisenman stated any information he received on this case was shown to the petitioner within a short period of time thereafter. Attorney Eisenman stated he also checked out the petitioner's story that someone else did the shooting and that subsequently the petitioner changed his mind about this. Attorney Eisenman stated the first time he heard the petitioner was claiming he was intoxicated was when this habeas corpus petition was filed. Attorney Eisenman stated it was absolutely untrue that he ever ingested any alcohol when he represented the petitioner as it was against his ethical principals. He emphatically denied that he ever told the petitioner that he did not want to represent him. He stated he had no reservations about representing the petitioner and that he shared everything he had in his file about this case with him.
Attorney Eisenman stated that after reviewing the evidence the state had and the evidence he had and after reviewing the public defender's investigator's reports he thought the state's chances of convicting the petitioner were very high. He told this to the petitioner along with the plea bargain offer the state had made. CT Page 11773 The petitioner wanted to talk over the plea bargain with his family which he did. Three days later on May 20, 1991 the petitioner agreed to accept the plea agreement offered by the state. That plea agreement was that the state would drop the charges of Attempted Murder and Carrying a Weapon without a Permit and the petitioner would plea nolo contendere to Assault in the First Degree and Robbery in the First Degree. As part of the plea agreement there was no agreement on a specific sentence but that the state would recommend substantial consecutive sentences for each charge to which the petitioner plead nolo contendere. If convicted on all four counts with which he was charged the petitioner could have received a sixty-five year sentence. Attorney Eisenman stated he absolutely did not tell the petitioner he would receive a sentence of twenty years. He stated he made clear what the plea offer was to the petitioner. Attorney Eisenman stated he read the statutes on Assault in the First Degree and Robbery in the First Degree to the petitioner. He then explained each statute in legal terms and in layman's terms to the petitioner. Attorney Eisenman stated his notes showed that he told the petitioner he could get a minimum of five years and a maximum of forty years incarceration for these crimes to which he plead nolo contendere.
Martha Parent the mother of the petitioner testified in this matter. She stated she saw Attorney Eisenman approximately six times between July 1990 and July 1991 for a period of one minute or less on each occasion. She testified she tried to talk to Attorney Eisenman about her son's case but that he would not talk to her. She said he looked like he had been drinking because he kind of stuttered and was shaky. She did not say how many times he appeared that way but the court took her to mean that each time she saw him his appearance was the same. She testified that prior to the petitioner's plea of nolo contendere Attorney Eisenman came up to her and told her to tell her son to take twenty years. At that time she stated Attorney Eisenman was dressed sloppy with his shirt out of his pants and his speech was stuttered. She stated she did not have a chance to talk to Attorney Eisenman because he just turned around and walked away after he spoke to her as aforesaid.
The petitioner claims that Attorney Carl Eisenman's representation of him was ineffective on May 20, 1991 and at other times prior thereto and on July 12, 1991 and at other times subsequent thereto based on the following:
(a) Attorney Eisenman made representations to CT Page 11774 the Petitioner, on several occasions, that he was not interested in representing him in this matter;
 (b) Attorney Eisenman displayed signs of insobriety.
On March 1, 1991 the petitioner wrote Judge Anne Dranginis concerning his case. (Exhibit 1) In that letter he stated he was willing to plead guilty if he received 20 suspension after 10 with 5 years probation. This was done without the knowledge of his attorney. He sent this letter on the advice of a fellow inmate according to the petitioner. The petitioner has put forth no defenses to the court that Attorney Eisenman did not investigate in the matter. Assuming for the moment that Attorney Eisenman representation was deficient (it was not) and the first prong of the Strickland test had been satisfied there was absolutely no evidence presented which would have satisfied the second prong of the test either under the Strickland case supra, as under the modified prejudice standard set forth in the Hill case supra.
After hearing the evidence the court finds that the Petitioner did not sustain his burden of proof. The petitioner's evidence was not credible and the court found Attorney Eisenman to be very credible in his testimony. There is not a scintilla of credible evidence that Attorney Eisenman displayed signs of insobriety or that he did not want to represent the petitioner.
The petition for habeas corpus is denied.
William J. Sullivan, Judge CT Page 11775