[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Petitioner Charles White brings this writ of Habeas Corpus alleging ineffective assistance of his counsel Raymond Canning. The Petitioner was originally charged with three counts of Sexual Assault in the First Degree and three counts of Risk of Injury to a Minor. On March 10, 1992 the Petitioner plead guilty to three counts of Sexual Assault in the Second Degree (C.G.S. § 53a-71(a)(1)) and three counts of Unlawful Restraint in the Second Degree (C.G.S. § 53a-96). On March 13, 1992 the Petitioner was sentenced for these crimes and received a total effective sentence of twenty years execution suspended after serving twelve years with probation for five years.
In 1991 the Petitioner was married to and living with Cindy Harrington who had four children including a ten year old boy named John. The Petitioner and Cindy Harrington were married on May 6, 1989 and were divorced approximately two years later.
The Petitioner plead guilty to committing a sexual act with his ten year step son on three different occasions. In fact he signed a statement for the police admitting to these acts which he now claims were false and he further claims he was forced and coerced into signing said statement. (Exhibit 2).
At the outset of this hearing the Petitioner through his attorney withdrew the Second Count in his Amended Petition.
The Petitioner claims that on the day he was arrested, June 7, 1991 he was placed in a jail cell for two hours after which time another prisoner was placed in the cell with him. This prisoner was all bloody and told the Petitioner that he cops beat him up because he would not talk. The Petitioner testified the police CT Page 12520-A then took him out of the cell to be questioned. He stated a Police Officer sat him in a chair and wrote out a statement and got in his face and said if he did not sign the statement he would get thirty years for each charge. The Petitioner said he then signed the statement under duress. He said he did not say one word in the Statement (Exhibit 2) he signed.
The Petitioner stated he saw his attorney three times while in jail for five to ten minutes each time. He claims his attorney Raymond Canning said there's nothing I can do for you. He said he discussed the case more with his attorneys investigator than he did with his attorney. He stated on one occasion when he was not satisfied with Attorney Canning's representation he asked Attorney Canning if he could see the Judge. He testified Attorney Canning said to his investigator "I guess we better help this guy."
The Petitioner claimed that his attorney was ineffective because the victim was at the juvenile home at Warehouse Point, Connecticut during the times the alleged crimes took place. He claimed that records were kept on the comings and goings of the victim at Warehouse Point facility and that these records would prove that the victim was not home when the offenses were alleged to have been committed and therefore prove his innocence. Attorney Canning stated his investigator, Raymond Condon, a retired New York homicide detective, got most of the victims records from Warehouse Point and if he (Attorney Canning) thought they were the wrong records he would have had a reinvestigation of them.
Cindy Harrington the Petitioner's former wife and mother of the victim testified in this matter. She stated she told the police that she thought her older brother might have molested her son. Attorney Canning testified that this was investigated by his office. It was determined that his former wife's brother could not have had access to the victim on a number of occasions when the crimes were alleged to have been committed.
Attorney Canning also testified that his inspector, Raymond Condon did not believe that the Petitioner could substantiate his claim that his statement (confession) was coerced or that State Trooper Fillmore told the petitioner he would not be arrested if signed a statement as the Petitioner claimed.
The Petitioner also testified that he was in a motor cycle accident on July 31, 1989 and sustained serious injuries to his left leg. As a result he wore a cast on his leg for three years. CT Page 12520-B During that time he was on pain medicines. He stated the cast was removed in June 1993. He stated during this time he could not do anything and could not walk without crutches. This was the period during which it was alleged that these crimes took place. He stated he had to sleep on the floor of the first floor of his home during this period and that all of the bedrooms including the victim's was on the second floor. The court assumes that the Petitioner was attempting to prove he could not have physically committed the crimes because of his leg injury. Attorney Canning stated that the petitioner never told him that it was impossible for him to commit the acts against the victim because of his leg cast.
The petitioner and his attorney made reference to the victim's credibility during this hearing. Attorney Canning stated that he discussed the victim's credibility with the petitioner. He stated he learned that the victim lied to a number of people on a number of occasions on a number of issues. However he testified that these lies always concerned the victim trying to get out of something. He discussed with the Petitioner that the crimes here could over shadow the victims credibility when here the victim was not trying to get out of something.
The Petitioner made much of the fact that he thought when he plead guilty he would only do (10%) percent of his sentence. He stated that on March 10, 1992 Attorney Canning wrote 5-5-2 on a piece of paper and gave it to him. He stated he said "what is this?" According to the petitioner Attorney Canning replied that is what was offered. The Petitioner then stated he asked Attorney Canning if he was eligible for ten percent time and he replied yes. The Petitioner stated he said "do it" because he already had nine months in jail toward any sentence and he only had three months to go to get to ten percent of time served. Attorney Canning testified he does not know if he discussed ten percent time with the Petitioner. He may have but he does not recall it. He testified that an individual does not become eligible for ten percent time until he is within three years of his release date. In the Petitioner's case he would get three years deducted from his twelve year sentence for good time. He would then have to serve six years to reach the three year point where he would be eligible to be released after serving only ten percent of three years. The Petitioner claims he would not have plead guilty if he knew he was not eligible for ten percent time.
The Petitioner also alleges that his attorney should have CT Page 12520-C filed a Motion to Suppress his statement which he gave to the police. Attorney canning stated that he did not feel the petitioner could prevail on such a Motion to Suppress.
The Petitioner also claims that he did not have an opportunity to discuss his case with Attorney Canning. The Petitioner was asked in cross examination by the State's Attorney what he meant by the following colloquy which took place during the plea canvass.
THE COURT: Have you discussed this matter with your attorney?
THE DEFENDANT: Yes, sir, I have.
THE COURT: Are you satisfied with your attorney's advice.
THE DEFENDANT: Yes.
He stated he thought they were just preliminary questions and he just wanted to get them over with because at the time he thought he only had to do ten percent of his sentence. Also during the plea canvass the Petitioner stated he had not been threatened or forced to plead guilty and that he was doing so voluntarily. During the plea canvass he also stated to the Judge that he heard the prosecutor's recommendation of twelve years to serve.
The Connecticut Supreme Court has adopted the two prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984) to determine if counsel's assistance was ineffective. Johnson v.Commissioner of Correction, 36 Conn. App. 695, 701 (1995). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice Id. To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that he was not functioning as the "counsel" guaranteed the petitioner by the sixth amendment. . . . The petitioner must show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. 702. To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as CT Page 12520-D to deprive the petitioner of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would he been different Id. 702.
In Hill v. Lockhart, supra, 474 U.S. 57-58, the court determined that the same two-part standard applies to claims arising from the plea negotiation process and that the same justifications for imposing the prejudice requirement in Strickland
were relevant in the context of guilty pleas. Although the first half of the Strickland test remains the same for determining ineffective assistance of counsel at the plea negotiation stage, the court modified the prejudice standard. As in Strickland, the prejudice standard for plea negotiations is intended to determine whether, but for counsel's constitutionally deficient performance, the outcome of the plea process would have been different The court went on to require that "in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id., 59.
The Hill court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial.
Copas v. Commissioner of Correction, 234 Conn. 139, 156.
To satisfy the Hill standard, a defendant must prove that, but for defense counsel's deficient performance there is a reasonably probability that he would have pleaded not guilty and proceeded to trial on the basis of the likelihood that his defenses would succeed in providing a more favorable outcome. ID 157 — Footnote10.
The court found the testimony of Attorney Raymond Canning to be very credible. The Petitioner's testimony was not credible. In fact some of his testimony can only be classified as incredible in the opinion of the court. From the testimony and evidence elicited in this hearing this court finds that the Petitioner was CT Page 12520-E represented in a truly professional manner by Attorney Canning. This court finds that the petitioner has not sustain his burden of proof that he had ineffective assistance of counsel during his aforementioned criminal matters an any of the claims he put forth during this hearing or that he set forth in his petition.
The court denies the Petitioner's writ of habeas corpus for the reasons stated hereinbefore.
William J. Sullivan, Judge