[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a habeas petition initially filed on May 28, 1991 in which the petitioner, Wilfred Hart, claims that his present incarceration is illegal on the basis of his assertion that he was denied the effective assistance of counsel in his criminal trial. By amended petition dated January 30, 1996, the petitioner has made two distinct claims. He alleges that his trial counsel was ineffective in that he failed to present medical evidence at the criminal trial of the petitioner's impotency, which, he claims, would have served as a defense to the charge of first degree sexual assault against him. Additionally, the petitioner claims that his trial counsel failed to bring to the trial court's attention the fact that jurors were observed discussing his case with a court officer while not in the courtroom. As to this latter assertion, it is the petitioner's claim that his trial counsel observed a court room deputy sheriff discussing the petitioner's case with jurors during a trial recess and that this deputy sheriff was relaying facts and opinions to the jurors about the petitioner's guilt expressed by other persons who were present in the courtroom. The petitioner claims that trial counsel, though aware of these remarks, failed to adequately seek a mistrial based on these alleged improper communications from the deputy sheriff to jury members.
On September 4, 1996 the court conducted an evidentiary hearing on this petition during which the court heard oral testimony from witnesses and received several documents into evidence, including the trial and post trial transcripts. Based on the evidence adduced at the hearing, the court makes the following findings and order.
On April 6, 1990, following a jury trial in the Superior Court, Judicial District of New London, in consolidated files CR 21-39855 and CR 21-39211, the petitioner was convicted of one court of Sexual Assault in the First Degree in violation of Connecticut General Statutes § 53a-70 (a), multiple counts of Sexual Assault in the Second Degree in violation of C.G.S. §53a-71 (a)(1), and accessory to Sexual Assault in the Second Degree, several counts of Risk of Injury in violation of C.G.S. § 53-21, Tampering with a Witness in violation of C.G.S. § 43a-151, and Bribery of a Witness in violation of C.G.S. § 53a-149.
On May 18, 1990, the petitioner was sentenced to a total effective sentence of fifty two years confinement, execution suspended after service of twenty six years with five years probation.
The petitioner's conviction was affirmed on direct appeal.State v. Hart, 26 Conn. App. 200 (1991).
The petitioner is currently an inmate confined to the custody of the Commissioner of Corrections serving the imposed sentences. CT Page 9141
At the underlying criminal trial, the petitioner was represented by Attorney Kenneth Leary of East Lyme.
At the core of the State's case was the charge that the defendant had committed various sex related offenses involving two minor victims. During the criminal trial, victims of the petitioner's sexual assaults, as well as other prosecution and defense witnesses testified. Victim J. testified that the petitioner performed cunnilingus on her (Respondent's Exhibit B, Trial Transcript (T), March 9, 1990, p. 80), and that he had penile intercourse with her (T. 92, T. 97, March 9, 1990) during which he had an erection (T. 97, March 9, 1990). This same witness testified that when the petitioner had sex with another minor victim in her presence, the petitioner's penis was "hard." (T. 132, March 13, 1990).
The jury heard evidence of uncharged misconduct from a minor victim who stated that she had sexual relations with the petitioner several times during which events his penis was erect. (T. 160-182, March 20, 1990).
While the petitioner exercised his right not to testify before the jury, his spouse testified at length during the trial. At no time during her testimony did she make the claim that the petitioner's was impotent. (T. 873-1032, March 28-30, 1990).
Finally, in regard to the issue of impotence, Attorney Leary, in his summation to the jury, explicitly declined to advance this theory of defense. Attorney Leary argued: "How you heard them talk about impotence. C said, oh, he is going to claim impotence.[1] G made me mention it. Did I claim impotence for him? Did I raise the impotence issue? There is no testimony, the only test for evidence is the one day basis. You can't go back a year ago. Whether Mr. Hart is impotent or not is none of my business. And it's I submit with all due respect, it's none of your business either. He and his wife have been through enough humiliation and pain throughout all thus stuff without us looking into the bedroom or inquiring into their sex life. I didn't want to touch it. And, I'm not going to. Whether he is or whether he isn't I don't care. I'm defending not based on inability but on the fact that he didn't do anything." (T. 1455, April 5, 1990).
Thus, while there was some testimony from the State's witness that could be construed as evidence that the petitioner had difficulty, at times, with obtaining and maintaining an CT Page 9142 erection (eg. the petitioner masturbated after being on top of a female victim, T. 31, March 15, 1990; admission on cross examination by victim that she may have told the State's Attorney that the petitioner tried to have sex with her but was unable to, T. 101-102, March 13, 1990; testimony from uncharged misconduct victim that the petitioner would "play with himself briefly" to get erect. T. 161, 180, March 20, 1990), it is clear that defense counsel elected not to pursue the issue of impotence as a defense strategy.
A fair reading of the transcript, and in particular Attorney Leary's cross examinations of the prosecution witnesses and his comments about them in summation, makes it plain that his trial strategy was to assail the credibility of the witnesses against the petitioner.
In order for the petitioner to succeed in his claim that he was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v.Washington, 466 U.S. 668 (1984), Bunkley v. Commissioner,222 Conn. 444 (1992), Copas v. Commissioner, 234 Conn. 139 (1995).
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not require that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Citations omitted; internal quotations marks omitted.) Johnson v. Commissioner,36 Conn. App. 695 (1995).
The Strickland court also gave guidance to the trial bench for its assessment of ineffective claims. The Supreme Court opined: "Judicial scrutiny of counsel's performance must be CT Page 9143 highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy' . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.) Strickland v.Washington, supra, 466 U.S. 689-90; Ouintana v. Warden, 220 Conn. 1
(1991); Williams v. Warden, 217 Conn. 419 (1991); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v.Washington, supra 466 U.S. 687. Thus, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland v. Washington, supra 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 398, 408 (1989); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
It is against this legal backdrop that the court assesses the CT Page 9144 petitioner's claims.
At the habeas trial, the petitioner testified that he had an impotence problem as early as 1982 following a back injury. He testified that while there were occasions in which he was not able to obtain an erection, he was not consistently impotent and was, on occasion, able to have penile intercourse. The petitioner further testified that he sought medical assistance for his impotence problem during the 1980's and that he had informed Attorney Leary of this history prior to his criminal trial. He also testified that he became married in 1985 to his (late) wife Vivian with whom, he claimed to have reported to counsel, he had difficulty consummating the marriage.[2]
At the hearing on this petition, S. Pierce Browning, M.D., an orthopedic surgeon with a practice in Norwich, testified that he first treated the petitioner on June 11, 1981 for a work-related injury to his back. His first recorded entry of an impotence problem relating to the petitioner was a file note on May 1, 1989 when the petitioner told him he was having a problem with erection. A subsequent correspondence from Dr. Browning to the petitioner on November 18, 1991, reveals that Dr. Browning remarked, in his May 1, 1989 note, that the petitioner told him on that date that he was having some problem with erection, "although you occasionally got one." Petitioner's Exhibit 1, Letter from S.P. Browning to petitioner. Since this problem was not within Dr. Browning's area of practice, he referred the petitioner to an appropriate specialist.
Dr. Browning also testified that he had no recollection of Attorney Leary contacting him prior to the petitioner's criminal trial.
Also testifying at the habeas hearing was Franklin Friedman, M.D., a urologist with a practice in Norwich. Dr. Friedman testified that he first saw the petitioner as a patient on February 24, 1989 on a complaint of impotence. During this visit, the petitioner told Dr. Friedman that he had been experiencing a problem with erections for six months, and that he was having some difficulty with urination. Dr. Friedman's office visit note indicates that the petitioner told him that he was able to have a morning reflex erection, which Dr. Friedman stated is normally associated with the need to void upon waking in the morning. cf. Petitioner's Exhibit 2, Office visit note of Dr. Friedman, February 24, 1989. Doctor Friedman testified that he saw the CT Page 9145 petitioner on one additional occasion, on March 29, 1989, when he discussed various options with the petitioner for dealing with his impotence problem.
Dr. Friedman further testified that he received a letter from Attorney Leary on January 16, 1990 in which he indicated that he represented the petitioner in a criminal matter. Though the letter included an authorization for the petitioner's file, Dr. Friedman had no recollection of having sent information from Hart's file to counsel. He did recall speaking with Attorney Leary on the telephone during which he told Attorney Leary that it is impossible to know if an individual is impotent at any particular time because impotency is a diagnosis based on history. At the habeas hearing, in response to a question from the court, Dr. Friedman testified that if he had been called as a witness at the criminal trial he would not have been able to testify with reasonable medical certainty as to whether or not Hart was capable of having an erection during the time period the sexual assaults took place. While he stated that he could have testified that when the petitioner visited with him in February of 1989 he complained of an impotency problem over the prior six months, he agreed that he would have also testified that he had no medical substantiation for Hart's claim of an inability to obtain erection other than Hart's verbal representations to him.
During his habeas testimony, in referring to his earlier phone conversation with Dr. Friedman, Attorney Leary stated that Dr. Friedman had told him that he did not believe he could be helpful to the petitioner if called to testify at his criminal trial.
In regard to the claim that Attorney Leary should have presented testimony of the petitioner's alleged impotency to the jury, the petitioner's assertion is without foundation. Given the medical testimony adduced at the habeas hearing, it appears that, at best, Attorney Leary could have sought to introduce evidence that Hart had complained to both physicians that he had problems with achieving an erection, but neither doctor would have been able to provide any objective substantiation for Hart's subjective complaints. Both medical witnesses testified that the diagnosis of impotence is based on history given by a patient and not on any objective findings. Taken in the light most favorable to the petitioner's claims, his problems with impotency, if any, would appear to have been episodic and not consistent. Thus, if Attorney Leary had determined to make the petitioner's alleged CT Page 9146 impotence an issue at the criminal trial, a jury could well have concluded that the history Hart gave to his treating physicians was not contradictory to witness testimony that sometimes Hart had difficulty in achieving erection, and that, at times, he manipulated himself to gain an erection. It is patent from Attorney Leary's jury summation that he considered and discarded this line of defense as untenable. Under the circumstances, the court finds no fault with this strategic decision.
In addition to his claim that Attorney Leary was ineffective for not advancing a claim of impotence, the petitioner asserts that Attorney Leary did not adequately seek a mistrial on the basis of his claim that a courtroom deputy sheriff engaged in inappropriate comments to the jury while the case was pending. The short answer to this claim is that the petitioner has not met his burden of proof that inappropriate comments were, in fact, made by the deputy sheriff to jury members.
At the habeas trial, the petitioner called Gregory Sullivan of East Lyme to testify. Mr. Sullivan, who was one of the court room sheriffs during the petitioner's criminal trial, acknowledged that he spent a substantial amount of time with the jury members during the trial as he was required to escort them to and from the courtroom at the beginning and end of the day as well as during recesses. He testified that while he engaged in conversations with jurors during the trial he did not, at any time prior to the verdict, talk with them about anyone who might have been present in the courtroom during the taking of evidence. He stated as well that he did not communicate any information about the case to any juror prior to the jury's verdict.
There was also evidence at the habeas hearing that on April 10, 1990 Attorney Leary filed a motion for a new trial based, in part, on the petitioner's allegation that the jury may have been tampered with by hearing some information from (then) Deputy Sheriff Sullivan to which they should not have been exposed. The trial court conducted an evidentiary hearing pursuant to this motion at which the petitioner, Mr. Sullivan, and each of the jurors testified. At this hearing Mr. Sullivan and each of the jurors denied that any improper conversations had taken place between the deputy sheriff and jury members while the trial was in progress. Though at the habeas hearing counsel for the petitioner alleged that Attorney Leary's examinations of the witnesses had been defective, the court has reviewed the transcript of this extraordinary hearing and finds that his CT Page 9147 questioning was adequate. cf. Respondent's Exhibit A, Transcript of hearing on May 18, 1990.
For the reasons stated, the petition is dismissed.
BISHOP, J.