[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By Second Amended Petition dated October 9, 1996, the petitioner alleges that his confinement is illegal on the basis of his assertion that he was denied the effective assistance of counsel during the underlying criminal process. Specifically, the petitioner claims that he had little contact with his counsel prior to trial, that his counsel failed to adequately pursue plea bargaining on his behalf, that his counsel was tardy in securing a mental health examination of the petitioner and was late in informing the State of his intent to present trial evidence CT Page 120 concerning the petitioner's mental health status and emotional condition at the time of the incident, that trial counsel failed to request additional time for trial preparation when he had just recently been assigned to represent the petitioner, and finally, that counsel's jury selection was inadequate because he did not, at the time of jury selection, have medical reports from his experts available to him to shape his voir dire questioning.
On October 17, 1996, the court conducted an evidentiary hearing on this petition during which the court heard testimony and received documentary evidence, including the transcript of the petitioner's criminal trial. Based on the evidence adduced at the habeas hearing, the court makes the following findings and order.
On June 20, 1989, following a jury trial in the Superior Court, Judicial District of Fairfield at Bridgeport, the petitioner was found guilty of the crime of Murder in violation of Connecticut General Statutes § 53a-54a. Subsequently, on July 28, 1996, the petitioner was sentenced to imprisonment for the term of life.
The petitioner's conviction was upheld on direct appeal.State v. Ortiz, 217 Conn. 648 (1991).
The petitioner is presently an inmate confined to the custody of the Commissioner of Corrections serving the imposed sentence.
During the underlying criminal proceedings, the petitioner was represented initially by Assistant Public Defender Ronald Williams, then by Assistant Public Defender William Holden, and, at trial, by Assistant Public Defender Erskine McIntosh. The State was represented by Assistant State's Attorney Henry Lyons.
While the underlying facts are more specifically noted in the Supreme Court's opinion, the essence of the State's case was evidence that on June 7, 1988 the petitioner fatally stabbed his wife, Myrna Ortiz, outside 46 Wood Avenue, in Bridgeport, Connecticut. cf. Petitioner's 9, Trial Transcript.
The petitioner did not testify at trial, and he presented no evidence to contradict the operative facts of the homicide. His defense consisted, in the main, of testimony from a psychologist that he suffered mental impairment, and that, at the time of the homicide, he was intoxicated and suffering extreme alcoholism, CT Page 121 and testimony from a psychiatrist that he suffered from an extreme emotional disturbance. Id. pp. 472-598.
In order for the petitioner to succeed in his claim that he was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v.Washington, 466 U.S. 668 (1984), Bunkley v. Commissioner,222 Conn. 444 (1992), Copas v. Commissioner, 234 Conn. 139 (1995).
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Citations omitted; internal quotations marks omitted.) Johnson v. Commissioner,36 Conn. App. 695 (1995).
The Strickland court also gave guidance to the trial bench for its assessment of ineffective claims. The Supreme Court opined: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the CT Page 122 presumption that, under the circumstances, the challenged action `might be considered sound trial strategy'. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.) Strickland v.Washington, supra, 466 U.S. 689-90; Quintana v. Warden,220 Conn. 1 (1991); Williams v. Warden, 217 Conn. 419 (1991); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v.Washington, supra 466 U.S. 687. Thus, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to; undermine confidence in the outcome." Strickland v. Washington, supra 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 398, 408 (1989); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
The petitioner asserts that his representation was compromised by the fact that he was represented by successive public defenders. The mere fact that three lawyers from the public defender's office represented the petitioner at different times does not lead the court to conclude that the petitioner suffered a detrimental discontinuity of representation.
The petitioner claims, however, that a pretrial offer of twenty five years to serve was withdrawn by the prosecution as a result of a gap in the petitioner's representation. Evidence before the court belies this assertion. By letter dated December 2, 1988, Attorney Williams informed the petitioner of the possibility that the victim's family might be willing to accept a plea negotiation resulting in the imposition of a twenty five CT Page 123 year sentence. In this letter, Attorney Williams also alerted the petitioner to his belief that the most favorable outcome he could anticipate following trial would be a sentence of twenty years on a conviction for Manslaughter in the First Degree, and that the worst result he could expect would be a sentence of sixty years on a Murder conviction. cf. Petitioner's Exhibit 1. The petitioner responded in writing to Attorney Williams rejecting the notion of a plea bargain resulting in the imposition of a twenty five year sentence. Respondent's Exhibit A.
During the habeas hearing, the petitioner testified that at the beginning of the criminal trial, Attorney McIntosh informed him that the State would be willing to agree to a sentence of forty years in return for a guilty plea to Murder. The petitioner rejected this offer while reminding counsel of the State's earlier willingness to consider a sentence of twenty five years. It is unclear from the record whether the State did ever, in fact, make a firm offer of twenty five years. Additionally, Attorney McIntosh testified that his notes reflect that the last discussion he had with the State prior to trial involved a sentence of thirty five years. Regardless of whether the last pretrial offer from the State was for thirty five or forty years confinement, it is clear that the petitioner rejected any pretrial offers from the State. Additionally, even if the State had been willing to resolve the charges on the basis of a twenty five year sentence in December 1988, the law imposes no burden on the State to leave an offer open indefinitely. This petitioner, who had a prior criminal record, was no stranger to the criminal justice process. Attorney McIntosh testified credibly that the petitioner understood his options. The court also finds credible Attorney McIntosh's testimony that he informed the petitioner of his opinion that he had no chance of an acquittal at trial. The responsibility for not accepting pretrial proposals from the State rests with the petitioner.
The petitioner asserts that Attorney McIntosh was tardy in obtaining the mental health evaluations necessary for him to present a defense. Jury selection in this matter commenced on May 18, 1996. Evidence started on June 7, 1989. On May 8, 1989, Attorney McIntosh wrote to Scott Grove, M.D. asking him to conduct a mental and emotional health examination of the petitioner. As a result of Dr. Grove's involvement, Charles Opsahl, Ph.D, a psychologist, was contacted to perform a neuropsychological evaluation of the petitioner. While it is true that Attorney McIntosh did not have a written report from Dr. CT Page 124 Grove or from Dr. Opsahl during the voir dire examination of potential jurors, the court credits Attorney McIntosh's testimony that he knew, during jury selection, that he did not have a mental health defense available to him. The court also accepts as credible Attorney McIntosh's testimony that at the time of voir dire he believed that his defense of the petitioner would be centered on his ability to present evidence of the petitioner's longstanding alcoholism as well as intoxication on the date of the homicide to negate the specific intent required for Murder, as well as the defense of Extreme Emotional Distress. The court finds that the questioning of potential jurors by Attorney McIntosh was informed and thorough.
Nor does counsel's examination of Dr. Grove or Dr. Opsahl suggest any lack of preparation. While Attorney McIntosh did not formally notify the court of his intention to present evidence relating to the petitioner's mental state until May 10, 1996, and the State filed an objection to this notice, it is clear from a reading of the trial transcript that the petitioner was denied no opportunity to present this testimony to the jury. A review of counsel's direct examination of Dr. Grove and Dr. Opsahl reveals that Attorney McIntosh was well prepared, and his questioning was thorough. The fact that the jury did not credit this evidence was due to no fault or deficiency of counsel.
Finally, the petitioner claims that Attorney McIntosh should have presented members of his family as witnesses to give further evidence of the petitioner's alcohol abuse. Indeed, Attorney McIntosh testified at the habeas hearing that if more time had been available to him prior to the commencement of trial he would have made further efforts to secure such testimony. At the habeas hearing, however, the court heard no credible evidence that any particular family members had been available to testify on the petitioner's behalf, or that such testimony would have been useful to his defense.
The court's review of the trial transcript reflects that the representation of the petitioner by Attorney McIntosh was diligent and vigorous. Additionally, while the petitioner was represented by successive public defenders prior to the trial, the petitioner produced no credible evidence at the habeas hearing that his pretrial representation was inadequate or that Attorney McIntosh was deficient in either his pretrial or trial representation of the petitioner. For the reasons stated, the petition is dismissed.
Bishop, J. CT Page 125