[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this habeas proceeding the petitioner Marlon Syms claims CT Page 4046 that he was denied effective assistance of counsel at his criminal trial in violation of his rights guaranteed under thesixth and fourteenth amendments to the United States constitution and Article I of the Connecticut constitution. The petitioner was convicted on October 22, 1991 by a jury in the Superior Court, Judicial District of Hartford-New Britain of kidnapping in the first degree in violation of General Statutes § 53a-92
(a)(b), accessory to kidnapping in the first degree in violation of General Statutes § 53a-8 and § 53a-92 (a)(b), robbery in the first degree in violations of General Statutes § 53a-134a(4), conspiracy to commit robbery in the first degree in violation of General Statutes § 53a-48a and § 53a-134a(4), and burglary in the second degree in violation of General Statutes § 53a-102a. His conviction resulted from the entry into a residential dwelling located at 220 Sargeant Drive, Hartford, Connecticut on January 8, 1991. He was sentenced to a total effective sentence of twenty years by the court (Corrigan, J.) His conviction was affirmed on appeal State v. Syms,34 Conn. App. 910, 642 A.2d 755 (1994), cert. den'd, 230 Conn. 903,644 A.2d 917 (1994). Presently the petitioner is in the custody of the commissioner of correction. A revised amended petition was filed August 29, 1997.
The petitioner alleges that his trial counsel, Attorney Margaret Levy, was ineffective in that she failed to conduct an adequate investigation into facts and witnesses, failed to call witnesses on the petitioner's behalf, failed to allow the petitioner to testify and failed to prepare and present any evidence in support of the petitioner's defense.
 I
The jury, at the petitioner's trial, could have reasonably found the following facts. On January 8, 1991, Norman Sparrow (N. Sparrow) was living with his mother, Mildred Burge and his brother Damien Sparrow (D. Sparrow) at 220 Sargeant Street, Hartford, Connecticut. At approximately 9 p. m., N. Sparrow heard a knock on the front door of their residence and a voice asking for "Deelee." Deelee was the street name for D. Sparrow who was not home at the time. N. Sparrow looked out the window and was unable to see who was at the door. Upon opening the door three men rushed into the residence. One of the three grabbed N. Sparrow around the neck while the other two men passed Burge's bedroom and entered the rear bedroom. The rear bedroom was the one used by the Sparrow sons. Burge was sitting on her bed in her CT Page 4047 bedroom at the time. N. Sparrow was forced at gunpoint to the doorway of his mother's bedroom where he told his mother that they were being robbed. He was aware that the individual who was holding the shotgun to his head was nervous and he talked with him in an effort to calm him down. Meanwhile the other two men could be heard by N. Sparrow rummaging through the rear bedroom. After the two assailants in the rear bedroom came into Burge's bedroom, both N. Sparrow and Burge were able to gain a glimpse of the second assailant until they were instructed to look away. Burge did not see the second assailant's face. However she noted that he was a light skinned black man wearing a beige work jacket and a hat with the ear flaps down. The assailants then ordered Burge into the bedroom closet and she complied. N. Sparrow, with the gun still to his head, was forced into the kitchen. He was ordered to get down on his knees and as the assailants were attempting to place a pillow case over his head he was able to view the second assailant's face. N. Sparrow identified the second assailant as light skinned, shorter than him, wearing a brown construction jacket with matching hat with the ear flaps down. Sparrow could not see the second assailant's hair, as it was covered by the hat, but observed that he was clean shaven. As for the third assailant, neither N. Sparrow or Burge saw the assailant's face as it was covered by a ski mask, however, they did recognize that he was a black male. N. Sparrow also indicated that all of the assailants were young and in their twenties. Shortly thereafter the three assailants left the residence. N. Sparrow went into his mother's bedroom to check on her after which he left the residence to pursue the assailants. He was unable to locate them and returned to the residence where he was met by D. Sparrow, who had returned home in the interim. D. Sparrow denied any knowledge of the events but N. Sparrow did not believe him. After the police, who had been called immediately after the incident, left the residence, N. Sparrow agreed to give a ride home to one of D. J. Sparrow's friends named Anthony Thompson. Thompson's street name was "Tone Loc". While being driven home Thompson stated that one of the assailants sounded like Marvin Syms.[1] At that point N. Sparrow saw a policeman, stopped the car, and asked the policeman to report the name to the investigating officers who had just been at his home. On January 12, 1991, the police presented a photo array of between eight and ten pictures of black men to N. Sparrow. He identified the petitioner as the second assailant. On February 6, 1991, the petitioner was arrested on the charges previously set forth.
II CT Page 4048
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. Copas v. Commissioner, 234 Conn. 139,153, 662 A.2d 718 (1995). In order for the petitioner to succeed in his claim that he was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Copas v. Commissioner, supra, 153; Bunkley v. Commissioner, 222 Conn. 444, 445, 610 A.2d 598
(1992).
To prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989). Competent representation is not representation with no error. "The constitution guarantees only a fair trial and a competent attorney; constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) Jeffrey v. Commissioner,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotations marks omitted.) Johnson v.Commissioner, 36 Conn. App. 695, 703, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995).
In Strickland, the Supreme Court opined: "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of CT Page 4049 reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."Strickland v. Washington, supra, 466 U.S. 689. It is clear, however, that failure to investigate is not a matter of trial tactics. "Constitutionally adequate assistance of counsel includes competent pretrial investigation." Siemon v. Stoughton,184 Conn. 547, 554, 440 A.2d 210 (1981). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) Strickland v.Washington, supra, 466 U.S. 690; Quintana v. Warden, 220 Conn. 1,5, 593 A.2d 964 (1991); Williams v. Warden, 217 Conn. 419, 423,586 A.2d 582 (1991); Jeffrey v. Commissioner, supra,36 Conn. App. 219-20.
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra,466 U.S. 687. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, a successful petitioner is required to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, supra, 234 Conn. 147. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." "Strickland v. Washington, supra, 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 398, 408, 559 A.2d 1094, cert. denied,493 U.S. 981, 110 S.Ct. 512, 108 L.Ed.2d 514 (1989) quotingStrickland v. Washington, supra, 695; Jeffrey v. Commissioner, supra, 36 Conn. App. 220-21.
 III
The petitioner claims that trial counsel failed to properly investigate the facts surrounding the crime in that he advised counsel of certain witnesses he wished her to interview which he CT Page 4050 claimed would provide information supporting his innocence. Specifically, the petitioner claims that he asked trial counsel to interview Charlene Arnold, Andrea Hannah, Lena Syms (L. Syms), David Mallory, D. Sparrow, N. Sparrow, Burge, Thompson, Mark Daniels, John Crooms and Gloria Hannah[2] and to possibly call some of them as witnesses. Further, the petitioner claims that his right to testify at the criminal trial was denied to him by counsel in violation of his rights. The petitioner's final claim is that trial counsel failed to call any witnesses and rested after the state had concluded its evidence.
 IV
The court makes the following additional findings of fact and conclusions of law. A few months prior to the commission of the crime, the petitioner had sprained his ankle and injured his thigh and back when he fell into an open manhole. He was admitted to the hospital emergency room, treated and released that same day. The petitioner made use of a cane to walk for some period of time after that injury. Arnold, the petitioner's mother, took him on two or three occasions to see a chiropractor who was treating the petitioner for these injuries. On these occasions, Arnold, who was living nearby with L. Syms, the petitioner's grandmother, would pick up the petitioner at the home of A. Hannah, with whom he was living. The petitioner would walk to and from the car aided by the cane.
 A
The petitioner claims trial counsel was ineffective for failing to ask Arnold, L. Syms and Hannah about this injury and for failing to have them testify that the petitioner was using a cane at the time of the crime and at the time of his arrest. The petitioner testified at the habeas hearing that he told trial counsel of this condition and the fact that the condition existed at the time of the crime. This testimony was contradicted by trial counsel. Trial counsel was an experienced criminal attorney at the time she undertook the representation of the petitioner. At that time she was under contract with the office of the public defender as a special public defender and also served in the federal court as a special public defender. Trial counsel was first assigned the case in June 1991, some five or six months after the commission of the crime. She met with the petitioner on numerous occasions either in the lock-up at the courthouse or at the jail where he was confined. She was certain and direct in her CT Page 4051 testimony that she was not told by the petitioner nor anyone else that he had suffered such an injury. The court accepts the testimony of trial counsel that she was unaware of the petitioner's injury as the more credible testimony.
Additionally, neither Arnold, L. Syms nor Hannah could state at the habeas hearing with any certainty that the petitioner was using a cane at the time of his arrest or at the time of the crime. Arnold testified that she could not say whether or not the petitioner was using a cane when he was arrested because No, I didn't really see him like the end of — that part of the time I didn't see him." (Habeas Transcript, October 17, 1997, p. 35.)
 B
The petitioner also claims trial counsel was ineffective for failing to call Arnold and Hannah to testify that the petitioner had a beard and was not clean shaven on the date of the crime. At the trial, N. Sparrow described the second assailant as being "Shorter than I, tan complexion, clean shaven."[3]
(Petitioner's Exhibit A, p. 196.) At the habeas hearing, the petitioner testified he was never clean shaven, that he always had a beard similar to the one he had at the habeas hearing. (Habeas Transcript, October 29, 1997, p. 25.) The petitioner's facial hair at the habea hearing could be described as a short mustache and goatee. At the habeas hearing, trial counsel testified that Arnold told her that the petitioner was not clean shaven throughout 1991. (Habeas Transcript, October 21, 1997, p. 12.) As mentioned above, however, Arnold testified at the habeas hearing that she did not see the petitioner around the time of the arrest. There was no testimony that she was aware of the whereabouts of the petitioner on the specific date of the crime, four weeks prior. Therefore, despite Arnold's statement that the petitioner was not clean shaven throughout 1991, it is obvious that the petitioner and Arnold had limited contact during this early part of 1991. The testimony of Arnold at trial would have been of dubious, if any, value to the petitioner.
There was no direct testimony by any witness at the habeas hearing, including Arnold, that the petitioner was not clean shaven immediately after the commission of the crime. Thus, the petitioner has not sustained his burden of demonstrating any prejudice to him sufficient to raise a question as to the fundamental fairness of the trial even assuming that the failure to call Arnold as a witness was not a decision that fell within CT Page 4052 the broad range of reasonable professional competence.
Trial counsel testified that she went to the Niantic prison and talked with Hannah who was incarcerated at that time on drug charges. During the meeting at the prison, Hannah was unable to pinpoint the date of the crime, indicated that she had not participated in the crime, and indicated that the petitioner had a beard during the time period when the crime was committed.; Additionally, she indicated to trial counsel that the day after the crime she had been approached by D. Sparrow who indicated his belief that the petitioner had been involved in the crime.
Hannah testified at the habeas hearing that she did not recall ever meeting with trial counsel. She admitted, however, to having an extreme drug problem at that time in her life and her recollection of events during that time was scant and uneven. Hannah testified at the habeas hearing that the petitioner was clean shaven at the time the crime was committed.
 Q Was he-did he have a beard, was he clean shaven? Do you recall back then?
A He didn't have a beard either.
 Q So his appearance would have been short haired, clean shaven person back in those days?
A Yuh, basically, yuh.
Habeas Transcript, October 29, 1997, p. 13.
Hannah's testimony at the habeas hearing on this issue was diametrically opposed to the statement that she gave trial counsel, when she was incarcerated. For purposes of determining whether trial counsel was ineffective the court must judge whether the conduct of trial counsel fell below the objective standard of reasonableness set forth above. In doing so the court must use the facts that were known or should have been known to trial counsel at the time of representation. Thus, for purposes of determining whether the petitioner has met his burden of proof on the first prong of the Strickland test, the court assumes that counsel operated with the knowledge that Hannah would testify that the petitioner had a beard. In considering the prejudice prong of the Strickland test, however, the court can take into account the testimony of Hannah at the habeas hearing which was CT Page 4053 that at the time of the crime the petitioner was clean shaven. This is because the court, in determining whether the petitioner has been prejudiced by trial counsel's failure to use Hannah as a witness at trial, should consider how she would have testified under oath at the criminal trial weighed against what she had told counsel when interviewed at the prison.
As to the first prong of the Strickland test trial counsel testified that she weighed whether she should call Hannah as a witness and that she decided for strategic reasons not to do so. Trial counsel was particularly concerned with the fact that Hannah had indicated to her that shortly after the crime had been committed she had been approached by D. Sparrow who was trying to locate the petitioner. While trial counsel recognized that this statement in all likelihood would not be admissible, she was concerned that the witness may volunteer this statement when being cross-examined. The implication would be that D. Sparrow believed that the petitioner was involved in the commission of the crime. The petitioner knew D. Sparrow and had some involvement with him. This risk she felt outweighed the limited benefit that would be gained by Hannah's testimony that the petitioner had a beard at the relevant time. Trial counsel felt that this testimony could be refuted by the state by indicating that the petitioner could have shaved immediately before the crime. Additionally, Hannah had a significant drug problem at the time and was incarcerated. Her recollection of events, dates and times during this period was limited.
As to the prejudice prong of the Strickland test, Hannah's testimony at the habeas hearing also cast some doubt on what she would have testified to if called at the criminal trial. At the habeas hearing when placed under oath she testified that the petitioner was clean shaven at the time of the crime. While this contradicts what she told counsel when interviewed at Niantic, the court must weigh this fact in determining whether or not the petitioner was harmed by the failure to call her as a witness. A reasonable possibility exists that if called at the criminal trial and placed under oath she would have felt compelled to testify consistent with her habeas testimony — that the petitioner was clean shaven. While it is difficult to assess the effect of the oath on Hannah's testimony based on her testimony at the habeas hearing, the burden is on the petitioner to demonstrate that the petitioner was in fact prejudiced. That burden has not been met. The decision not to call Hannah as a witness was reasonable trial strategy and the petitioner has CT Page 4054 failed to demonstrate any prejudice resulting from that decision within the meaning of Strickland.
 C
The petitioner also claims that trial counsel was ineffective in that she failed to investigate the matter by not interviewing D. Sparrow, N. Sparrow and Burge.
Trial counsel contacted D. Sparrow who was incarcerated at the time at a prison in Somers by phone. He indicated there was no point in counsel visiting him since he had no knowledge of who committed the crime. This statement was consistent with what he had told his brother on the night of the incident and indicative of the fact that if he did know something he was not willing to disclose it.
Trial counsel testified that she engaged the services of a private investigator, Donald Gates, whom she claims she asked to visit her client and to talk with Burge and N. Sparrow. She testified that she had contacted the prison to advise them that Gates would be visiting. Further she indicated that she had correspondence to the petitioner dated September 19, 1991 indicating that she had retained Gates and that he would be going to Somers to see the petitioner. The only indication in her file of actual contact with Gates were notes of a telephone conversation with Gates. He advised her in that conversation that N. Sparrow and Burge had no interest in talking about the incident with him. In light of that trial counsel advised Gates that there was no reason for him to make a written report.
Gates was called as a witness at the habeas hearing and was unable, after a diligent search of his records, to find any indication that he had been retained by trial counsel to carry out this investigation. He indicated that he keeps all his files on computer disk and that he found no record of any investigation on behalf of the petitioner nor did he have any present recollection of being retained on this matter. He testified that it was possible that trial counsel had talked to him about the case but if he had been actively investigating the matter he would have created a file. Further he indicated that it was his practice to generate a written report. Based on the testimony, and drawing reasonable inferences therefrom, the court finds that Gates did call Burge and N. Sparrow and having no success in obtaining an interview orally reported this to trial counsel. CT Page 4055 Since the investigation required little time and since no report was generated, Gates did not retain any record.
No evidence was presented at the habeas hearing as to what information would have been uncovered if trial counsel had in fact been successful in obtaining an interview with these three individuals. Whether the defense of the petitioner would have been strengthened in any conceivable manner is entirely speculative and thus the burden to satisfy the prejudice prong of the Strickland test has not been met.
 D
Petitioner also claims that trial counsel was deficient in failing to call Thompson, Crooms and Daniels. It is highly speculative as to the value of any of these witnesses at trial even assuming they would testify.
As to Thompson, trial counsel had no recollection of either asking Gates to interview him or actually contacting him herself and the court finds that she did neither. However trial counsel was aware that Thompson was out on bond for robbery in the first degree on an unrelated matter at the time and in direct communication with the police.
Crooms and Daniels did not testify at the habeas hearing, therefore, it is impossible to determine what the substance of their testimony would have been or what information they could have supplied to trial counsel that would have been of value. The petitioner suspected Crooms and Daniels of being the perpetrators of the crime. When trial counsel was preparing for trial, they were both incarcerated and awaiting trial in Part A of the Superior Court. They were both represented by counsel. Trial counsel felt, based on her experience, that talking with their counsel in an effort to gain permission to talk with Crooms and Daniels would have been fruitless. She felt it was highly unlikely that their attorney would allow them to discuss this matter with her, never mind testify at trial. It is uncontroverted that there were three assailants who invaded the victims' house on the night of the crime. While Crooms and Daniels may have been two of those individuals, that would not have necessarily eliminated the petitioner as the third participant.
As to Thompson, the petitioner wanted him interviewed as a CT Page 4056 potential source of information as it was Thompson who first pointed to the petitioner as potentially one of the perpetrators. During the time immediately preceding the trial, Thompson was out on bond on an unrelated charge of robbery in the first degree and was in contact with the police. Thompson also did not testify at the habeas hearing.
It was clear from the testimony that little effort was put in by trial counsel in this phase of the investigation. The minimal burden involved in attempting to contact these individuals would suggest that a reasonably competent trial attorney make that effort, even if the possibility of obtaining cooperation was remote. However the court need not decide whether the failure by trial counsel to contact counsel for Crooms and Daniels and to contact Thompson was an exercise of reasonable professional judgment or incompetent pretrial investigation. This is because the burden on the petitioner to establish any prejudice resulting from counsel's alleged failure has not been met. As earlier noted Crooms, Daniels and Thompson were not called as witnesses at the habeas hearing and thus their value to the petitioner's defense efforts remains wholly unknown. Therefore the petitioner has failed to meet his burden on the prejudice prong of theStrickland test. A habeas court need not decide the deficiency of trial counsel's performance if consideration of the prejudice prong will be dispositive of the claim of ineffectiveness. Aillonv. Meachum, 211 Conn. 352, 362, 559 A.2d 206 (1989).
 E
The petitioner also claims trial counsel was ineffective for failing to allow the petitioner to testify at trial. Immediately before the commencement of the trial in October 1991, at the request of trial counsel, an in-court line-up took place out of the presence of the jury. At that time N. Sparrow identified another person, not the petitioner, as the perpetrator of the crime. As a result of this misidentification, the trial court did not permit and in-court identification of the petitioner and allowed trial counsel to bring the misidentification to the attention of the jury. (Petitioner's Exhibit A, p. 213.)
Trial counsel, prior to trial and at various points during the trial, discussed with the petitioner the issue of whether he should testify on his own behalf. Trial counsel advised the petitioner against testifying. This recommendation was strongly influenced by the inability of N. Sparrow to identify the CT Page 4057 petitioner at the trial. The petitioner was not coerced by trial counsel into not testifying nor was he unaware of his right to testify, if he so desired, despite counsel's advice. The petitioner testified at the habeas hearing that he wished to testify. It is clear that the petitioner has the right to testify at his criminal trial on his own behalf. Ostolaza v. Warden,26 Conn. App. 758, 763, 603, A.2d 768 (1992), and that this is the petitioner's decision to make. It is also the obligation of trial counsel to advise her client as to the risks inherent in testifying. Id. Trial counsel's advise was reasonable in light of the petitioner's criminal record, which included a larceny conviction, and the misidentification of the petitioner by N. Sparrow. Trial counsel did not threaten, coerce, or use undue influence in an effort to prevent the petitioner from testifying. (Habeas Transcript, October 17, 1997, p. 22.) The court concludes that the petitioner was free to make the decision and did make the decision on whether to testify after counsel properly advised him of the risks.
 F
The final claim of the petitioner is that trial counsel failed to present any witnesses on behalf of the petitioner. In fact, trial counsel did not call any witnesses. After the state rested, trial counsel moved to dismiss the charges, which motion was denied. Counsel then rested. At the habeas hearing, trial counsel testified that she felt the state had not proven beyond a reasonable doubt that the petitioner participated in the crime. She felt reasonable doubt had been established by the misidentification of the assailant by the victim at trial. The state had not produced any other witness who was able to place the petitioner at the scene nor was any forensic evidence produced by the state that placed the petitioner at the scene. The case effectively was an identification case dependant entirely on the credibility of the victim, N. Sparrow. Counsel had effectively attacked the only eyewitness who had identified the petitioner as the perpetrator through use of line-up. The court finds that counsel's decision not to present any witnesses was reasonable trial strategy in light of all of the circumstances set forth above.
 VI
Taking each claim individually or considering the combined; effect of all of the alleged failures of trial counsel, the CT Page 4058 petitioner has failed to sustain his burden of proof on the allegations set forth in the second revised amended petition. Therefore, for all of the reasons set forth the petition is dismissed.
Zarella